```
                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
                          EASTERN DIVISION

   Bedford Nissan, Inc.,        Case No. 1:16-cv-00423-DAP
   et al.,                      Cleveland, Ohio

            Plaintiffs,         Wednesday, July 12, 2017
       vs.                      11:00 a.m.

   Nissan North America, Inc.,

            Defendant.

          TRANSCRIPT OF TELEPHONIC PROCEEDINGS
        BEFORE THE HONORABLE DAN AARON POLSTER,
              UNITED STATES DISTRICT JUDGE

   APPEARANCES:

   For the Plaintiffs:     Gary W. Johnson
                           Matthew C. Miller
                           Robert A. Poklar
                           Weston Hurd
                           1301 East Ninth Street, Ste. 1900
                           Cleveland, Ohio   44114
                           216-687-3295

   For the Defendant:      Alison K. Eggers
                           John R. Skelton
                           William N. Berkowitz
                           Seyfarth Shaw
                           Two Seaport Lane, Ste. 300
                           Boston, Massachusetts   02210
                           617-946-4847

                           David R. Vance
                           Zashin & Rich
                           950 Main Avenue, 4th Floor
                           Cleveland, Ohio   44113
                           216-696-4441

   Official Court Reporter: Heidi Blueskye Geizer, CRR
                           United States District Court
                           801 West Superior Avenue
                           7-178 U.S. Court House
                           Cleveland, Ohio   44113
                           216-357-7092
   Proceedings recorded by mechanical stenography, transcript
   produced by computer-aided transcription.
```

1      MORNING SESSION, WEDNESDAY, JULY 12, 2017  11:00 A.M.
2                   JUDICIAL ASSISTANT:  Counsel on hold for all
3      plaintiffs, do I have Gary Johnson?
4                   MR. JOHNSON:  Yes.
5                   JUDICIAL ASSISTANT:  Do I have Matthew Miller?
6                   MR. MILLER:  Yes.
7                   JUDICIAL ASSISTANT:  Do I have Bob Poklar?
8                   PROBATION OFFICER:  Yes.
9                   JUDICIAL ASSISTANT:  Do I have client
10     representative Mike D'Amato?
11                  MR. D'AMATO:  Yes.
12                  JUDICIAL ASSISTANT:  Tiehl Belza?
13                  MR. BELZA:  Yes.
14                  JUDICIAL ASSISTANT:  Matt Greenberg?
15                  MR. M. GREENBERG:  Yes.
16                  JUDICIAL ASSISTANT:  And Jeff Greenberg?
17                  MR. J. GREENBERG:  Yes.
18                  JUDICIAL ASSISTANT:  For defendants, do I have
19     Allison Eggers?
20                  MS. EGGERS:  Yes.
21                  JUDICIAL ASSISTANT:  Do I have John Skelton?
22                  MR. SKELTON:  Yes.
23                  JUDICIAL ASSISTANT:  Do I have Bill Berkowitz?
24                  MR. BERKOWITZ:  Yes.
25                  JUDICIAL ASSISTANT:  Do I have David Vance?

1          MR. VANCE: Yes, you do.
2          JUDICIAL ASSISTANT: And do I have client
3  representatives Kevin Wagstaffe --
4          MR. WAGSTAFFE: Yes.
5          JUDICIAL ASSISTANT: -- and Justin O'Sullivan?
6          MR. O'SULLIVAN: Yes.
7          JUDICIAL ASSISTANT: Is there anyone on the
8  line I've missed? (Pause.) I'm going to take that as a no.
9      I would remind you, there is a court reporter on the
10 line. Please identify yourselves before speaking.
11     You are now on with Judge Polster.
12         THE COURT: All right. Good morning,
13 everyone. Obviously I'm not real happy to be taking my time
14 dealing with these discovery disputes, but that's part of
15 the job, so I'm doing it; but since the lawyers are
16 requiring me to take my time, I've got all the clients on so
17 you all understand what's happening here.
18     As I predicted, all that's happening is you're
19 spending a huge amount of time and money, and going nowhere,
20 but I'll say something about that when we finish. And I'm
21 going to try and reconvene a settlement process one more
22 time, in the hope that we can put an end to this; but if
23 not, you know, we'll just keep going the way you're going.
24     So I only have a few minutes. I'm going to cut
25 through these issues very quickly. No one is going to be

1     happy with the result, but so be it.
2          All right.  We'll start with the defendant's issues
3     that were raised in their first letter, this geographic
4     scope of discovery.  The defendants are proposing the
5     northeast quarter of Ohio, the plaintiffs want the Midwest
6     Region.
7          What is the Midwest Region?  What does that consist
8     of?
9               MR. BERKOWITZ:  Your Honor, William Berkowitz
10    for Nissan.  The Midwest Region encompasses the midwest
11    United States, from approximately Minnesota in the west, to
12    I believe western Pennsylvania in the east, and then down to
13    Kentucky.
14         Mr. Wagstaffe, who is regional vice president and
15    heads up that region, could describe it with better
16    particularity.
17              THE COURT:  All right.
18              MR. WAGSTAFFE:  Yes.  So we cover roughly
19    between 10 to 11 states representation of dealers.
20              THE COURT:  And then succinctly, why do the
21    plaintiffs think that the cars being sold in Minnesota are
22    somehow relevant to this case?
23              MR. JOHNSON:  Your Honor, Gary Johnson
24    speaking.  I'm sorry.
25         Just the statistics that all these metrics are based

1    on, they have a national -- Nissan has done national and
2    regional, and as of last year did state. So what we're
3    asking for is the basis of which all these metrics were
4    determined, including Mr. Marino's deal was based on
5    regional statistics, as well as what were compared as other
6    dealerships for that purpose.
7         So we're not asking for anything new, we're asking so
8    that we can compare it to the issues as they have been
9    presented and as they have been kept over time, and that's
10   what we're attempting to do.
11            Their attempt to restrict it just to the Cleveland
12   Metro area is an arbitrary --
13            THE COURT: They've already expanded it to the
14   northeast quarter of Ohio, so they've agreed to that.
15            MR. D'AMATO: Judge, this is Frank D'Amato.
16   We are on incentive money based on region. We have certain
17   incentive money based on national criteria. We also earn
18   our cars based on those things. So if there's other people
19   getting this preferential treatment then I'm at a
20   disadvantage, and I will lose incentive money based on that.
21        So that's why we're asking for regional, at least
22   regional information, because it has direct impact on my
23   ability to earn their incentives.
24            THE COURT: All right. Look, I'm going to cut
25   through this. All right? If the plaintiffs want anything

1  beyond the northeast quarter of Ohio, they'll pay for half
2  of the discovery costs.  So I think that's fair, and --
3              MR. JOHNSON:  Your Honor, this is Gary
4  Johnson.  We'll agree to that.
5              THE COURT:  Well, whether you agree or not,
6  I'm directing it.
7              MR. JOHNSON:  I understand.
8              THE COURT:  Nissan is to provide the response
9  for the Midwest Region, and the plaintiffs are to pay 50
10 percent of the cost.
11     All right.  The next issue, the timing of these
12 depositions.  All right.  Ideally you only depose people
13 once, but if material documents are produced after the
14 deposition by either side, then the other side can redepose
15 the individual, but just based on questions based on the
16 newly-produced documents.  That goes both ways.
17             MR. BERKOWITZ:  Your Honor, William Berkowitz.
18 May I be heard briefly on that?
19             THE COURT:  You can, but I'm not going to
20 change my ruling, Bill, but go ahead.
21             MR. BERKOWITZ:  Now that we have your order on
22 the Midwest Region we can obviously start producing
23 documents, gathering and producing documents on that.  That
24 will take probably three to five weeks to gather and
25 produce.

1    My proposal is that we have depositions take place
2    after both sides have --
3          THE COURT: You all can discuss this. All
4    right? I'm not going to spend my time on scheduling
5    depositions. All right? If there are going to be a lot of
6    new documents produced at the request of the plaintiff it
7    probably makes sense to postpone the depositions, but I've
8    made my order; it goes both ways, because the same thing
9    might happen to you. You depose a witness and then the
10   plaintiffs subsequently produce material documents. You can
11   redepose that person, not going back into old stuff, but
12   questions on the newly-produced documents.
13         MR. BERKOWITZ: I understand, Your Honor.
14   Just about 90 percent of our documents have yet to be
15   produced, so we think it doesn't make sense to start
16   depositions and then bring folks back inevitably.
17         THE COURT: I think you're probably right. I
18   think you're probably right. I think that's a waste of
19   everyone's time.
20         MR. JOHNSON: Your Honor, this is Gary
21   Johnson.
22     Bill, we will work with you on that. If we have a
23   timetable we'll work with you on the depositions. It is not
24   our intentions, nor do we want to spend the time and energy
25   to bring people twice. We just want to reserve the rights

1   as we want to get discovery moving, but we'll work with you
2   on that and get that done, and set them up so that we don't
3   have to do that.
4               THE COURT: All right. Next is deposing
5   Nissan CEO José Munoz, and when it will be. I mean, all
6   right, the plaintiffs can depose Mr. Munoz, and they can
7   depose him whenever they want.
8        You know, I'm going to say more about this at the end,
9   but I have told both sides that they either need to settle
10  this case or negotiate a buyout, Nissan just buys out these
11  dealers, because all you're going to do is destroy what has
12  been a good business relationship for in some cases more
13  than 40 years. And trust me, if the plaintiffs insist on
14  deposing Mr. Munoz, that will probably do it. But this is a
15  serious case, and the CEO signed off on this, so he should
16  be aware of what this case is about and take his time; but
17  the plaintiffs need to understand that once they cross that
18  Rubicon they might as well just sell their dealerships back
19  to Nissan.
20       You can do it if you want.
21       Next --
22              MR. BERKOWITZ: Your Honor, just before you go
23  on to the last point -- this is Bill Berkowitz again -- we
24  have other depositions presently scheduled to go first. May
25  we proceed with those depositions first and see if they

1    obviate the need for Mr. Munoz's deposition, as we suspect
2    they will?
3                    MR. JOHNSON:  Well, it's the plaintiffs' call.
4    I'm saying they can depose him.  All right?  They can depose
5    him, and it's their call as to the order.  I mean, you can't
6    tell them, you know, they can't tell you when you're going
7    to take your depositions, Bill, and in what order.  That's
8    your call.  Obviously both sides have to be reasonable in
9    terms of scheduling.
10          All right.  Defendants want to require the plaintiffs
11   to fully disclose its damage calculations.  I mean, they've
12   already provided some disclosure.  They'll have to provide
13   it at some time, but I'm not going to order anything more
14   than what they've disclosed now.  At some point obviously
15   they're going to have to provide their expert report, and
16   that expert is going to be available for deposition, and the
17   defendants can probe it fully.
18          All right.  The plaintiffs then had three issues.  The
19   plaintiffs say that no documents were produced in response
20   to their first and second requests, the defendants say
21   that's not true, almost 5,000 pages were produced, and the
22   parties agreed to a rolling production.  So I don't know
23   what you're all talking about.
24                    MR. MILLER:  Your Honor, this is Matt Miller
25   on behalf of plaintiffs.  I think Mr. Berkowitz just spoke

1    and said 90 percent of the documents hadn't been produced,
2    and they will be produced in the next three to five weeks
3    since the Judge has ruled on the geographic scope, so that I
4    think is a moot point now.
5             THE COURT:  All right.
6        All right.  There is some issue on the vehicle buyers
7    spreadsheet.  I didn't understand this.
8             MR. JOHNSON:  Your Honor, this is Gary
9    Johnson.  Just speaking of that, we received a sample list
10   of approximately 2,900 names of purchasers.  We are under
11   the impression that it's approximately 8,400 buyers from
12   these two dealerships, so therefore, when we received this
13   list we've now been informed that it is a sampling and it is
14   not all of the names, and we have requested and will refine
15   our request so that we would ask for all of the names,
16   because we need all of those names to check against our
17   records to determine which vehicle buyers we lost in that
18   process.  And we were not aware that it was a sample that
19   was provided, and I think that we'll be able to work that
20   out with the defendants.
21            THE COURT:  All right.
22       Then the last one is ESI production.
23            MR. MILLER:  Your Honor, this is Matt Miller.
24       I sent a letter to defendants' counsel on June 30th.
25   They responded to that letter after I sent my discovery

1   dispute letter to the Court on the 10th, so that is an issue
2   again that we will be able to work through with defense
3   counsel and get it taken care of.
4           THE COURT: All right.
5           MR. JOHNSON: We've narrowed down the ESI list
6   substantially, Your Honor. This is Gary Johnson.
7           THE COURT: All right. Well, I think that I
8   covered all the issues on the two -- on the letters back and
9   forth.
10      All right. Now, the reason I wanted the clients on
11  the phone, all right, this is dragging on and on, and is
12  just spending a whole lot of time and money, a lot of heat
13  and no light, and all it's going to do is destroy what has
14  been a good business relationship.
15      So the parties need to make a decision. You need to
16  settle this case for some amount of money and economic and
17  noneconomic terms, or Nissan NA just needs to buy out these
18  dealerships and part ways. I don't care which way you do
19  it, but the way you're doing it is a debacle, and it's just
20  going to destroy the relationship. Whoever wins or loses
21  this lawsuit, this is going to drag on for years and years,
22  up and back to the Court of Appeals.
23      So this is what I'm going to do. I am ordering Nissan
24  NA to provide a firm written monetary offer no later than
25  two weeks from today, July the 26th. Part of the problem is

1      Nissan NA never put their offer, the ones that we had
2      discussed, I discussed with them privately, they never put
3      it in writing.  They kept saying it would take too long and
4      be difficult.  Well, you're just going to do it.  And it's
5      going to be substantial, and it's going to be along the
6      lines that we discussed privately.
7           And then the plaintiffs are to make a written
8      response, written good-faith response.  Your demand is pie
9      in the sky; so if you get a real offer, you've got to make a
10     real response ten days later.  That's by Monday, August the
11     7th.
12          And then I'm going to have everyone in in late August
13     or beginning of September.  You can do some back and forth
14     between then, and I'm going to try and get this settled.
15     And that firm offer from Nissan is going to be an offer in
16     the alternative.  One will be to settle the case, to settle
17     the lawsuit.  The second one will be buying out the
18     plaintiffs, including settling the lawsuit, but it will be
19     buying out their dealerships.
20          I'm doing that because I want the parties to really
21     focus on what they're doing, and if that's what you want to
22     do, just say that it's time to end the relationship, fine,
23     then Nissan should put the money on the table and do it, and
24     probably get a lot of the money back by reselling the
25     dealerships to someone else; but so if it's an offer in the

1    alternative, then plaintiffs will respond to both parts of
2    the offer.
3         Then I'm going to schedule something right now where
4    everyone comes in, and I'm suggesting the end of August or
5    the first part of September.  So I'm going to put out a few
6    dates that I can do it, and then we'll figure one out.
7              MR. BERKOWITZ:  Your Honor, if I may, it's
8    Bill Berkowitz.  I wonder if we could extend that schedule
9    that the Court has just laid out by one week, because I know
10   the way my client operates, and it's going to be extremely
11   difficult to turn it around in two weeks.
12             THE COURT:  All right.  One more week isn't
13   going to be the end of the world, so we'll make it August
14   3rd, August 3rd.  August 3rd, and then ten days after that a
15   response would be the 13th.  That's a Sunday, so it's the
16   14th.
17             MR. JOHNSON:  Yes, Your Honor.
18             THE COURT:  Right.  The 13th is a Sunday, so
19   the 14th.  And then I'm going to look at some dates in
20   September for us to meet.  We'll give you a few weeks to do
21   some back and forth.
22        I'm proposing -- well, I could do it August 28th,
23   September 5th, or September 14th.  I'm proposing those three
24   dates.  Monday, August 28 is a Monday; September 5 is a
25   Tuesday, that's the day after Labor Day; and the 14th is a

1  Thursday.

2  MR. JOHNSON: This is Gary Johnson. October
3  5th?

4  THE COURT: No, September 5th. August 28th,
5  September 5th, September 14th. I could probably do it
6  September 15th.

7  MR. D'AMATO: This is Mike D'Amato. There is
8  a national dealer meeting the day after, so most of those
9  guys will be in Vegas, I think. Right, Kevin?

10  THE COURT: I won't be in Vegas, but if you're
11  there, that's not a bad day.

12  MR. WAGSTAFF: September 14th would probably
13  be the better date, sir.

14  THE COURT: How is Thursday, September 14th?

15  MR. MILLER: Your Honor, this is Matt Miller.
16  That's good for the plaintiffs.

17  MR. BERKOWITZ: We have a problem on the
18  defendants' side. Both Mr. Skelton and I are due to be in
19  Chicago on the 14th for our annual partner meeting. We are
20  available the other dates.

21  THE COURT: The only other date was the 5th,
22  and all the plaintiffs are in Las Vegas.

23  LAW CLERK: How about the next week after the
24  14th.

25  MR. BERKOWITZ: August 28, is that available?

1  THE COURT: Right. August 28 was the first
2  date.
3  MR. JOHNSON: I am not available.
4  MR. POKLAR: I am not available. Robert
5  Poklar.
6  MR. BERKOWITZ: Okay, we'll do it on the 14th
7  then.
8  THE COURT: I could probably do it on Friday
9  the 15th. I may have to leave at about 2:00 or 3:00, if we
10 start at 9:00, if that's better. I don't know how many
11 days --
12 MR. BERKOWITZ: I think it doesn't matter,
13 Your Honor -- this is Bill Berkowitz -- for us, because our
14 meetings go both days. So either way we're going to -- one
15 of us is going to wind up missing it. So it's okay,
16 whatever is best for the Court.
17 THE COURT: I could probably do it Monday the
18 18th if -- I mean, partners' meetings are important, they
19 want the partners there. So I think I could do it, I've got
20 some trials, but I doubt if they're going to start, and I
21 could always start them a day late or something. I could do
22 it Monday the 18th, September 18th.
23 MR. JOHNSON: Your Honor, this is Gary
24 Johnson. If we could do it in the morning, if that's
25 possible.

1    THE COURT: Yes. Start at 9:00.
2    MR. BERKOWITZ: Bill Berkowitz. We are good
3 with that. Obviously we need to check with clients, but at
4 least the lawyers are okay.
5    THE COURT: Well, you've got some clients on
6 the phone.
7    MR. BERKOWITZ: Kevin?
8    MR. WAGSTAFFE: Yes, we can make that work.
9    THE COURT: Okay. Then we'll make it Monday
10 9-18 at 9:00 a.m. Obviously all clients with full
11 settlement authority, and I guess what I'd like, a joint
12 status report. Maybe I should have *ex parte* ones. You
13 know, I don't know what you -- by then you will have -- you
14 certainly have gotten a lot of documents, and you may have
15 deposed a bunch of people that sheds some light on all of
16 this, so we might actually have some facts as opposed to
17 just theories.
18    Let's say Tuesday, say Tuesday, September 12 at 4:00
19 p.m., status reports. Well, you tell me. Do you want to
20 exchange them or do you want to do them *ex parte*? What do
21 you think is going to be most effective?
22    MR. BERKOWITZ: Bill Berkowitz. I think *ex
23 parte* would probably be more effective, Your Honor, that way
24 each party can share with you, you know, their internal
25 convictions on the case.

1     MR. JOHNSON: Either way, Your Honor. This is
2  Gary Johnson.
3     THE COURT: All right. I'll tell you what,
4  why don't you do them *ex parte*, and then if after I read
5  them if I suggest that you share all or most of what you've
6  said, then I'll just tell you to do that. And obviously
7  they should reflect the latest offers and demands. I expect
8  the parties, you're going to have a fair amount of time
9  between -- you have a month between August 14th and
10  September 12th to do some back and forth after the first
11  one, so I expect the parties to do that.
12     All right. Anything else anyone would like to bring
13  up?
14     MR. JOHNSON: Not from the plaintiffs' side,
15  Your Honor. This is Gary Johnson.
16     MR. BERKOWITZ: Bill Berkowitz. Not from the
17  defendant.
18     THE COURT: All right, then I'm speaking to
19  the clients.
20     I mean, you all just need to figure out a way to get
21  this resolved. A knock-down drag-out lawsuit that is going
22  to take several years before we have discovery and a trial,
23  and then it's at least a year and a half for an appeal, is
24  just going to absolutely destroy the business, and it
25  doesn't make sense. So just figure out a way to get this

1   done, either keeping the relationship the way it is and
2   resolving the lawsuit, or just saying it's time to part
3   ways, and you work it out.  And that's going to be my
4   objective, and you all should focus on which way you want to
5   go.
6       All right.  Thank you.  Enjoy the rest of the summer,
7   and I'll see everyone in September.
8       Thank you.
9                   - - - - -
10
11
12
13              C E R T I F I C A T E
14
15      I certify that the foregoing is a correct transcript
16  from the record of proceedings in the above-entitled matter.
17
18          s/Heidi Blueskye Geizer    July 19, 2017
19          Heidi Blueskye Geizer, RMR-CRR         Date